# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| (1) Admiral Van Lines, LLC<br>(2) All-American Moving & Storage, LLC<br>(3) All-American Van Lines, Inc.<br>(4) All-Wright Van Lines, LLC<br>(5) American Van Lines, LLC<br>(6) Confederate Van Lines, LLC<br>(7) East West Van Lines, LLC<br>(8) Electronic Van Lines, LLC<br>(9) Exodus Van Lines, LLC<br>(10) Federal Van Lines, LLC<br>(11) Freeway Van Lines, LLC,<br><br>Plaintiffs<br><br>v.<br><br>The United States of America,<br><br>Defendant | ) | ORIGINAL<br><br>FILED<br>JAN 30 2004<br>U.S. COURT OF FEDERAL CLAIMS<br><br>No. 04-0134C |

COMPLAINT

Plaintiffs complain of defendant and for their causes of action respectfully represent:

JURISDICTION

1. This Court has jurisdiction over plaintiffs' claims against defendant pursuant to 28 U.S.C. §1491(a).

PLAINTIFFS

2. Plaintiff (1), Admiral Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

3. Plaintiff (2), All-American Moving & Storage, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

4. Plaintiff (3), All-American Van Lines, Inc., is a Tennessee corporation with its principal place of business at Memphis, TN.

5. Plaintiff (4), All-Wright Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

6. Plaintiff (5), American Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

7. Plaintiff (6), Confederate Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

8. Plaintiff (7), East West Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

9. Plaintiff (8), Electronic Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

10. Plaintiff (9), Exodus Van Lines, LLC, is a Tennessee limited liability company with its principal place of business at Memphis, TN.

11. Plaintiff (10), Federal Van Lines, Inc., is a Tennessee limited liability company with its principal place of business at Memphis, TN.

12. Plaintiff (11), Freeway Van Lines, Inc., is a Tennessee limited liability company with its principal place of business at Memphis, TN.

13. Plaintiffs participate as carriers in the Department of Defense (DoD) domestic procurement for the transportation of used household goods of military and civilian personnel and their dependents.

DEFENDANT

14. Defendant is the United States of America which at all times relevant hereto acted through the Secretary of Defense, the Military Traffic Management Command (MTMC),[1] the Army and Air Force of the United States, the General Services Administration (GSA) and the Defense Finance and Accounting Service (DFAS) and their respective officers, employees and contractors.

FACTS

15. MTMC is designated by DoD as the sole manager of its domestic and international personal property procurement programs, the terms of which are set forth in the Defense Transportation Regulation (DTR), Part IV, DOD 4500.9-R, MTMC's Tender of Service and the terms of the solicitations issued by MTMC semi-annually.

16. Plaintiffs were tendered household goods shipments by the issuance of Government Bills of Lading (GBLs) by employees of the military services at the

[1] Effective January 1, 2004, MTMC became the Surface Deployment and Distribution Command. References herein are to MTMC since the actions complained of were taken by defendant prior to January 1, 2004.

various military installations. Plaintiffs were required, and did furnish, defendant's Personal Property Shipping Offices (PPSOs) at the military installations at which the shipments originated, for each shipment serviced, a copy of the GBL, the household goods inventory, the weight ticket, the Government Form DD-619. The DD-619, which is signed by the PPSO, sets forth the accessorial services for which plaintiffs are to be compensated, e.g., storage-in-transit, extra pickup, etc. (MTMC Tender of Service, Mary 31, 1990, para.22; October 31, 1995, para. 53). For accessorial services performed at destination, plaintiffs furnished the PPSO at destination a Form DD 619-1, as required by DTR, paragraph 405 F.1.

17. Each plaintiff was approved by MTMC pursuant to an EDI Trading Partner Agreement which authorized it to bill defendant for servicing household goods tendered to it by Electronic Data Interchange (EDI), as authorized and encouraged by GSA's Federal Management Regulation, 41, C.F.R. §102-118.60 and §102-118.65. All billings which are the subject of this complaint were made by EDI. The purpose of EDI billings is to avoid the furnishing of paper documents, with plaintiffs transmitting the required billing data by their electronic submissions.

18. At all times relevant hereto, GSA's regulations provided that each agency, including the DoD, is required to forward all relevant electronic transportation billing records to the GSA Audit Division which maintains such documents for legal and auditing purposes. (41 C.F.R. §102-118.80 and former 41

C.F.R. §101-41.502(a) (1)). GSA Regulation §102-118.80, effective April 20, 2000, provides:

> " Your agency's internal financial regulations will identify responsibility for recordkeeping. In addition, the GSA Audit Division keeps a central repository of electronic transportation billing records for legal and auditing purposes. Therefore, your agency must forward all relevant electronic transportation billing documents to:
>
> General Services Administration
> Federal Supply Service
> Audit Division (FBA)
> 1800 F Street, NW
> Washington DC..."

19. Plaintiffs allege that the PPSOs failed to input the billing information into the electronic Transportation Operational Personal Property Standard System (TOPS) from the documents which the MTMC Tender of Service required all carriers to file with the origin PPSO, which input was necessary to comply with GSA's regulations and the military regulation governing this procurement, DTR, paragraph 405F.1.c. and to permit GSA to discharge its audit responsibilities.

20. After efforts to obtain the requisite auditing data from MTMC and from DFAS failed, GSA demanded that plaintiffs produce approximately 16,742 paper documents consisting, inter alia, of the GBL, the weight certificate, the DD-619 and DD-619-1, relating to approximately 5,930 shipments under threat of offsetting all payments previously made to plaintiffs for servicing the identified shipments pursuant to 31 U.S.C. §3726(d). In making these demands, GSA did not allege that there was reason to believe that any of the payments for which GSA demanded

documents for post-payment audit involved an overcharge. Compliance with GSA's demands compelled plaintiffs to perform an additional service, not required of carriers under their contracts with defendant, viz., the production of a voluminous number of duplicate paper documents which would not have been necessary but for the failure of defendant's employees to input the billing information required for audit into TOPS. The performance of this additional service, which consisted of the retrieval, duplication and transmission of the paper documents demanded by GSA, under threat of offset, has caused plaintiffs to incur substantial expenses which would not have been incurred but for the government's breach of its own regulations. By this complaint, plaintiffs seek reimbursement of these expenses which have been incurred since January 1, 2000.

21. On September 17, 2001, GSA itself interpreted the requirement of carriers which bill by EDI to produce paper documents and caused a stipulation containing this interpretation to be filed with this Court in Air Van Lines, Inc., et al. v. United States, No 00-499C. That stipulation, in relevant terms provides:

> "i) On carrier billings to the Defense Finance Accounting Service ('DFAS') for services performed in the Department of Defense (DoD) Personal Property Program electronic data interchange ('EDI'), the only information required to be submitted was/is that contained on the Public Voucher Form for Transportation Charges (SF 1113) and that contained on the Government Bill of Lading ('GBL') covering the shipment or shipments involved in the billing. If during a post-payment audit of a given shipment, the General Services Administration ('GSA') determines that there is a reason to believe that payments made pursuant to a carrier's billing (initial and supplemental) involve an overcharge, it shall request the documents required to resolve the question by a single demand on the carrier. However, if payment of an additional

> supplemental billing or billings has been received by the carrier, and GSA determines there is reason to believe that such payment involves an overcharge, GSA shall have the right to request the documents required to resolve the question by an additional demand. The carrier agrees to respond promptly to these demands...."

Defendant has stipulated in the directly-related cases, Stevens Van Lines, Inc. et al. v. United States, No. 02-502C (consolidated), involving the same procurement and similar claims, that the above stipulation is GSA's interpretation of its own regulations, governing the obligation of carriers, such as plaintiffs, to produce duplicate paper documentation for the purpose of GSA's post-payment audit of carrier EDI billings.

22. Requests were made of GSA by various carriers to identify any shipments which GSA had reason to believe involved an overcharge and who offered to furnish documents relating to those shipments, as specifically provided by the terms of the stipulation. GSA, however, declined to make any such identification.

COUNT I

(Breach of DOD Procurement Contract)

23. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-22 above.

24. Plaintiffs, having been approved by MTMC to bill by EDI, were not required by their contracts with DoD to produce paper documents to GSA for post-payment audit except where there was a reason to believe there was an overcharge to the government. Under the terms of the governing regulations, GSA's post-payment

audit was to be made on the GBL and accessorial service data the PPSOs were required to input into TOPS, which the PPSOs failed to do for the shipments in issue. As a result of the PPSOs failure to input the required data into TOPS, GSA asserted its demands for thousands of duplicate documents on plaintiffs, under threat of depriving plaintiffs of all compensation for services performed, where no question of overcharge had been raised. This constitutes a breach of the contract formed by defendant's solicitation, its regulations, the GBLs and the carrier's Tender of Service and rate submission.

COUNT II

(Breach of EDI Contract)

25. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-22, above.

26. GSA's requirement that each plaintiff produce duplicate paper documents as a prerequisite to retaining monies received for the shipments billed by EDI constitutes a breach of the EDI Trading Partner Agreement which, by its terms, authorizes the party to the agreement to bill the government by electronic transmission and contemplates that PPSOs will input electronic data into TOPS which will be used for audit of the EDI billings and will eliminate the need for the party to furnish paper documents to defendant as a condition to payment for services rendered.

COUNT III

(Additional Service Not Required By Plaintiffs' Contracts)

27. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-22, above.

28. Plaintiffs' production of paper documents to GSA for post-payment audit, at defendant's request and for defendant's benefit, is an additional service not required by plaintiffs' contracts with defendant. The performance of the additional service of production of paper documents not required by plaintiffs' contracts obligates defendant to reimburse each plaintiff in quantum meruit for its costs of complying with defendants's demands.

COUNT IV

(Unlawful Taking)

29. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1-22, above.

30. Beginning during January 2002, approximately two years after the first EDI billings had been submitted and paid, GSA issued written notices to plaintiffs that it was going to collect all the monies previously paid, pursuant to plaintiffs' EDI billings, for servicing the shipments which are the subject of this complaint, unless plaintiffs furnished thousands of paper documents which had previously been furnished to defendant as required by the Tender of Service. Plaintiffs, all of whom are contractually authorized by MTMC to bill by EDI, had no duty to furnish the

paper documents as a condition to retaining the monies received either under the contract with MTMC and the military services, covering transportation services performed, or under the contract with MTMC, covering the submission of EDI billings.

31. GSA's written notices that it would take back from plaintiffs all monies paid for servicing shipments, which are the subject of this complaint, left plaintiffs no alternative. If plaintiffs had refused to produce the documents demanded, GSA stated they would take back all monies paid plaintiffs for services performed on thousands of shipments although there was no indication, let alone evidence, that the performance required by the contractor was not proper and complete. If these monies were taken from plaintiffs, they would have been forced to cease doing business.

32. The actions of defendants complained of constitute an unlawful and unconstitutional taking of plaintiffs' monies in violation of the Fifth Amendment of the Constitution. The fact that plaintiffs produced the documents demanded by GSA, rather than permit GSA to complete its threatened taking of funds, should not immunize defendant's actions from the constitutional prohibition of taking without just compensation. To lessen the damages resulting from defendant's action, as here set forth, plaintiffs were compelled to produce the documents demanded by defendant and incurred substantial costs, reimbursement for which is sought in this action.

33. No action has been taken on the claims in Counts I-IV above, or any part thereof, by Congress or any other department or agency of the United States, or in any judicial proceeding, except as herein.

34. Plaintiffs are the sole owners of these claims and no assignment or transfer of said claims or any part thereof has been made.

PRAYER OF RELIEF

WHEREFORE, based on the foregoing, plaintiffs pray that the Court find that each plaintiff is entitled to reimbursement for its costs incurred in furnishing duplicate documentation, pursuant to defendant GSA's demands, and that the Court render judgment for each plaintiff for reimbursement of such costs, including attorney's fees and interest on the monies necessarily expended, in an amount subject to proof, and grant such further relief as the Court may deem just and proper.

Respectfully submitted,

Alan F. Wohlstetter
DENNING & WOHLSTETTER
815 Connecticut Avenue, NW
Suite 500
Washington, DC 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorney for Plaintiffs

Stanley I. Goldman
DENNING & WOHLSTETTER
815 Connecticut Avenue, NW
Suite 500
Washington, DC 20006

Of Counsel

Dated: January 30, 2004

# PLAINTIFFS

(1) Admiral Van Lines, LLC
(2) All-American Moving & Storage, LLC
(3) All-American Van Lines, Inc.
(4) All-Wright Van Lines, LLC
(5) American Van Lines, LLC
(6) Confederate Van Lines, LLC
(7) East West Van Lines, LLC
(8) Electronic Van Lines, LLC
(9) Exodus Van Lines, LLC
(10) Federal Van Lines, LLC
(11) Freeway Van Lines, LLC